**CENTRAL KENTUCKY STEEL, Appellant,**

v.

**Charles F. WISE;  Hon. Irene Steen, Administrative Law Judge, and Workers' Compensation Board, Appellees.**

**No. 1999–SC–0962–WC.**

Supreme Court of Kentucky.

June 15, 2000.

Douglas A. U'Sellis, Boehl Stopher & Graves, Louisville, for Appellant.

Neil S. Weiner, Louisville, Walter W. Turner, Department of Workers' Claims, Frankfort, for Appellees.

WINTERSHEIMER, Justice.

This appeal is from an opinion of the Court of Appeals affirming a decision of the Workers' Compensation Board which affirmed an opinion and award by the Administrative Law Judge.

The questions presented are whether substantial evidence supported the duration of the award of temporary total disability benefits; whether the average weekly wage was calculated correctly and whether the ALJ should be required to correct and/or clarify her finding concerning the medical expense dispute.

Wise fractured his left arm on April 28, 1997, when a bundle of steel hit him while working for Central Kentucky Steel. Previously, Wise worked for CKS in October, November, and December of 1996, before being laid off. He was unemployed from December 10, 1996, until March 1997 when he returned to work for CKS. Although he was unable to work during that interim due to a non-work-related finger injury, he testified that he would have elected not to work even if that injury did not occur. Wise worked for CKS seven days between March 18, 1997 and April 28, 1997, the date of the arm injury. During that time, he earned $18.76 per hour. CKS voluntarily paid temporary total disability benefits of $89.41 per week from April 29, 1997, through August 1, 1997. At the end of September 1997, Wise moved to Florida

and returned to work earning approximately $13.00 per hour.

Thereafter, Wise filed for benefits under the Kentucky Workers' Compensation Act. The arbitrator awarded him TTD benefits in the amount of $447.03 per week from April 29, 1997, through August 1, 1997. He also determined Wise to have a 1% permanent partial impairment and awarded him weekly benefits of $42.51 for 425 weeks. Finally, the arbitrator awarded Wise medical benefits for occupational therapy in accord with the Kentucky medical fee schedule.

CKS filed a request for a *de novo* review before an administrative law judge. The ALJ affirmed all of the determinations by the arbitrator except that she extended the TTD benefits until September 30, 1997. She further determined that a disputed medical bill from Lee Memorial Hospital in Florida where Wise received treatment was compensable. The Board and the Court of Appeals both affirmed the opinion and award of the ALJ. This appeal followed.

CKS argues that the Court of Appeals and the Board erred in affirming the award of TTD benefits through September 30, 1997. It contends that if a claimant has either reached maximum medical improvement or has been released to return to work, the condition of temporary total disability would no longer exist and eligibility for TTD benefits would terminate. To support its position CKS relies on testimony from Dr. Gardner, the treating physician, who stated that he would allow Wise to return to work on July 11, 1997, with a restriction on lifting no more than five pounds with his left hand. Thus, CKS maintains that benefits should have terminated on July 11, 1997. We disagree.

KRS 342.0011(11)(a) states that:

"Temporary total disability" means the condition of an employee who has not reached maximum medical improvement from an injury and has not reached a level of improvement that would permit a return to employment.

CKS would interpret the statute so as to require a termination of TTD benefits as soon as the worker is released to perform any type of work. We cannot agree with that interpretation. It would not be reasonable to terminate the benefits of an employee when he is released to perform minimal work but not the type that is customary or that he was performing at the time of his injury. Dr. Gardner stated that Wise did not reach maximum medical improvement until October 28, 1997. Moreover, Wise did not return to work until the end of September. Consequently, the award by the ALJ of TTD benefits through September 30, 1997, was supported by substantial evidence.

Alternatively, CKS argues that even if the statute intends that an individual return to or, at least, be released to return to his or her usual job, the evidence in the record before the ALJ clearly indicates that Dr. Gardner stated that Wise could return to work without restrictions on September 7, 1997. We must disagree. The evidence relied on by CKS is speculative. Dr. Gardner did suggest on August 8, 1997, that Wise would be able to return to work without restrictions one month after that date. It was not until October 13, 1997, however, that he assigned Wise a maximum medical improvement as of October 28, 1997. Again, we must conclude that substantial evidence supported the award by the ALJ of TTD benefits through September 30, 1997.

Next, CKS claims that the ALJ erred in her determination of the appropriate average weekly wage. It asserts that in order to have his wages calculated under KRS 342.140(1)(e), Wise was required, yet failed, to prove that he would have worked during the thirteen weeks immediately preceding his injury. CKS relies on the testimony of Wise wherein he acknowledged that after the layoff in December 1996 and before he went back to work for CKS in March 1997, he had intended to

stay off work for several months. Wise stated that even if the accident to his finger had not happened, he still probably would not have worked. Thus, CKS maintains that the situation presented in this case does not fit within the statute. We disagree.

KRS 342.140(1)(e) states:

The average weekly wage of the injured employee at the time of the injury or last injurious exposure shall be determined as follows:

(1) If at the time of the injury which resulted in death or disability or the last date of the injurious exposure preceding death or disability from an occupational disease:

(e) The employee had been in the employ of the employer less that thirteen (13) calendar weeks immediately preceding the injury, his average weekly wage shall be computed under paragraph (d), taking the wages (not including overtime or premium pay) for that purpose to be the amount he would have earned had he been so employed by the employer the full thirteen (13) calendar weeks immediately preceding the injury and had worked, when work was available to other employees in a similar occupation.

Here, there is no dispute that Wise did not work for CKS for thirteen weeks immediately preceding his injury. Testimony was presented that work was plentiful at the time Wise was laid off work and that he could have been employed at that time if he had been capable of doing so considering his finger injury during that period. Moreover, Wise would have been able to work for a full thirteen weeks preceding the injury at the hourly rate of $18.76 because this kind of work was available to other employees in a similar occupation. CKS would require the worker to prove a willingness to work prior to the injury in calculating the average weekly wage. We must agree with the Court of Appeals that no such requirement exists in the statute.

Contrary to the claim by CKS, such a reading of the statute is not unfair. At the time of his injury, Wise was earning $18.76 per hour and his actual loss of income due to his injury far exceeds the maximum weekly total disability rate of $447.00.

The Board and the Court of Appeals were correct in affirming the findings by the ALJ that the Lee Memorial Hospital bill was fair and reasonable. Further, no reason exists for the ALJ to correct and/or clarify her finding with regard to the medical expense dispute because no dispute exists. No one, including Wise, argues that CKS is obligated to pay anything over and above the fee schedule. Still, CKS contends that the out-of-state hospital where Wise received treatment, continues to bill for the excess between what the Kentucky medical fee schedule allows and what the charge is by the hospital. Consequently, it requests that this case be remanded to the ALJ to enter an order specifying that application of KRS 342.035 renders the amount in dispute non-compensable.

■ Although we recognize the aggravation in receiving a bill for which one is not obligated to pay, no such order is required here. The ALJ does not have the authority to order CKS to pay more than the Kentucky medical fee schedule authorizes. As correctly noted by the Court of Appeals, the issue of balance billing requires no additional proof and remedy other than that provided by the ALJ in her opinion as provided by law. KRS 342.035(2). CKS is not obligated to pay anything over and above the Kentucky fee schedule.

The opinion of the Court of Appeals, the decision of the Board and the award of the Administrative Law Judge are affirmed.

All concur.