**FEI INSTALLATION, INC., Appellant,**

v.

**Richard WILLIAMS; Honorable R. Scott Borders, Administrative Law Judge; and Workers' Compensation Board, Appellees.**

No. 2006–SC–0261–WC.

Supreme Court of Kentucky.

Feb. 22, 2007.

---

Kimberly D. Newman, Kim Van Der Heiden, Allen, Kopet & Associates, PLLC, Lexington, Counsel for Appellant, FEI Installation, Inc.

Ched Jennings, Jennings Law Office, Louisville, Counsel for Appellee, Richard Williams.

## OPINION OF THE COURT

An Administrative Law Judge (ALJ) determined that the claimant was not entitled to temporary total disability (TTD) benefits until the date of the surgery following his injury, that he did not sustain a permanent partial disability, and that he was not entitled to future medical benefits. Although the Workers' Compensation Board affirmed in all respects, the Court of Appeals reversed and remanded regarding TTD and medical benefits. Appealing, the employer asserts that the finding regarding TTD should not have been disturbed because there was substantial evidence that the claimant was able to perform his customary work until the surgery. The employer also asserts that the claimant was not entitled to future medical benefits under KRS 342.020(1) because the injury did not result in a permanent partial disability.

The claimant was a trained millwright. He began working for the defendant-employer in June, 2003, installing overhead conveyors during a shutdown at the Ford plant. He testified that he had worked as both a general foreman and foreman. As a general foreman he would read blue-

prints, assign workers into crews, and do the installation. He would tell the foremen what to do and assure that supplies and materials were available to keep the work progressing. He stated that he worked as a general foreman "when they got in a bind" and "couldn't handle all the different spots." After most of the job had been completed, they worked only on weekends and he became a foreman. He explained at the hearing that the conveyors had been installed at that point and they were correcting things that were not up to Ford's specifications. As the "working foreman" of a small crew, he directed the other members but would also change out bolts; lift and carry on his shoulder angles that weighed up to 120 pounds; and use his hands to push and pull, grasp and grip, climb, perform various over-the-shoulder activities, and bring supplies to the crew. He acknowledged that the employer did not require foremen to wear a tool belt but stated that they were required to wear a safety harness.

On August 24, 2003, the claimant was using a ratchet to remove a bolt when he lost his footing and fell, striking his right elbow on a steel beam. He stated that he experienced immediate numbness on his entire right side and severe pain in both his right elbow and the outer three fingers of his right hand. The injury was reported to the superintendent, Scott Brown, and the claimant was taken to Prompt Care. After being x-rayed, he was referred to Dr. Kilambi, an orthopedist.

The claimant testified that he saw Dr. Kilambi a few days after the injury. For five or six weeks, Dr. Kilambi prescribed physical therapy and placed the arm in a sling. After electrodiagnostic testing to investigate persistent numbness in the outer three fingers of the right hand, he recommended surgery. On November 17, 2003, he performed a submuscular ulnar nerve transposition, which was followed by additional physical therapy. Feeling returned to the claimant's fingers after the surgery. Although the soreness in his elbow decreased, it remained tender.

The claimant testified that from the injury until the surgery Dr. Kilambi restricted him to light-duty work that required minimal use of his right hand. He notified the employer of his restrictions and tried several times to get light-duty work. He stated that he had waited until the Friday before Labor Day for a call and then went camping. He also testified that he took a form to Mr. Brown after each doctor visit and was told that he could not work because he was on medication. Brown eventually advised him to collect unemployment benefits and stated that he was laid off. He applied for the benefits, but his claim was denied.

At the hearing, the claimant submitted a return to work assessment from Dr. Kilambi dated October 16, 2003. It was the only pre-surgical release in evidence and indicated that he was able to perform light duty but restricted primarily to left-handed work. The record indicates that he primarily uses his right hand.

Mr. Brown became superintendent of the Ford project shortly before the claimant was injured. He testified that the claimant worked as the foreman of a four or five-man crew, under the direction of a general foreman. He stated that millwrights work primarily when a plant is not operating and that their hours vary. During the period between the injury and surgery (i.e., August 24 to November 17, 2003), they worked on weekends only. No work was available during November. Brown asserted that the claimant's absences from work through the end of October were not due to the injury or the unavailability of work within his restrictions. He explained that he never knew

whether he would need zero or 50 workers for a particular weekend until late afternoon on the preceding Thursday. He stated that he had work for the claimant on three or four weekends after the injury. Before Labor Day weekend, the general foreman had left a message with the claimant's wife. On another occasion, the claimant said that he would work but didn't report. Brown acknowledged that he advised the claimant to apply for unemployment benefits while awaiting workers' compensation benefits and stated that he didn't know the significance of the two types of claims. He explained that he needed only a few workers at the time and could not be certain that the claimant would report if called. Brown stated that the foreman of four to six workers spent most of the time planning and that the job wasn't physical unless the foreman chose to help the crew. They were not required to wear a tool belt or use tools. He acknowledged, however that all of the foremen "would jump in and help out with their men." He stated that the doctor's note limited the claimant to light duty and that his job as a foreman was light duty.

It is undisputed that the employer paid TTD benefits voluntarily from the date of the surgery until March 1, 2004, when the claimant was released to return to regular-duty work. By that time, the contract with Ford had ended. The claimant testified that he attempted to work setting up commercial tents but that it aggravated his elbow pain. He continued to have shoulder and elbow pain that was helped "quite a bit" by taking Vioxx, and had been unable to find other work. He stated that he would take work as a millwright "in a heartbeat" if it became available.

■ It was the claimant's burden to prove that he was entitled to TTD from the date of his injury until the surgery. KRS 342.285 provides that an ALJ's deci-

sion is "conclusive and binding as to all questions of fact" and that the Board "shall not substitute its judgment for that of the [ALJ] as to the weight of evidence on questions of fact." KRS 342.290 limits the scope of review by the Court of Appeals to that of the Board and also to errors of law arising before the Board. Thus, the court explained in *Paramount Foods, Inc. v. Burkhardt,* 695 S.W.2d 418 (Ky.1985), and *Caudill v. Maloney's Discount Stores,* 560 S.W.2d 15, 16 (Ky.1977), that an ALJ has the sole discretion to determine the quality, character, and substance of evidence and that an ALJ may reject any testimony and believe or disbelieve various parts of the evidence, regardless of whether it comes from the same witness or the same adversary party's total proof. *Special Fund v. Francis,* 708 S.W.2d 641, 643 (Ky.1986), further explained that where the party with the burden of proof is not successful before the ALJ, the issue on appeal is whether the decision was unreasonable because the overwhelming evidence favored that party.

Under *Central Kentucky Steel v. Wise,* 19 S.W.3d 657 (Ky.2000), a worker who has been released to return to work with restrictions that preclude the individual's customary type of work is entitled to receive TTD benefits, but they terminate at maximum medical improvement (MMI). Because there was conflicting evidence regarding the claimant's ability to work as a foreman during period between the injury and the surgery, it was for the ALJ to judge the credibility of the witnesses and to weigh their testimonies regarding the physical demands of the job and of the claimant's ability to perform them despite his injury. Convinced that the ALJ's decision to deny TTD from the date of the claimant's injury until his surgery was "grossly unjust," the Court of Appeals di-

rected the ALJ to enter an award in the claimant's favor.

It was undisputed that during the relevant period Dr. Kilambi restricted the claimant to light-duty work. The only documentary evidence also indicates that he also restricted the claimant from more than minimal use of his right hand. The claimant was right-handed. Although Mr. Brown testified that the foreman's job did not require more than light-duty work, he also testified that all of the foremen of four to six-man crews "jumped in" and helped their crews. The claimant described himself as the "working foreman" of a small crew. Like his crew, he was required to wear a safety harness, although he was not required to wear a tool belt. His description of the work he performed clearly exceeded his restrictions, and its accuracy was supported by the fact that he was injured while ratcheting a bolt on a conveyor. Moreover, nothing refuted his testimony that he took medication after the injury that prevented him from performing his duties and that Dr. Kilambi placed his right arm in a sling for a period five or six weeks after the injury. Under the circumstances, the overwhelming evidence indicated that his injury prevented him from performing his customary work. It was unreasonable to conclude that the claimant's customary work came within his restrictions and that he failed to meet his burden of proof under KRS 342.0011(11)(a) and *Central Kentucky Steel v. Wise, supra.*

■ The second issue on appeal concerns the claimant's entitlement to future medical benefits absent a permanent partial or total disability award. KRS 342.020(1) provides, in pertinent part, as follows:

In addition to all other compensation provided in this chapter, the employer shall pay for the cure and relief from the effects of an injury or occupational disease the medical, surgical, and hospital treatment, including nursing, medical, and surgical supplies and appliances, as may reasonably be required *at the time of the injury and thereafter during disability,* or as may be required for the cure and treatment of an occupational disease. The employer's obligation to pay the benefits specified in this section shall continue *for so long as the employee is disabled* regardless of the duration of the employee's income benefits. (emphasis added).

At issue is whether KRS 342.020(1) entitles a worker who has reached MMI but has no permanent impairment rating from the injury to continue to be compensated for reasonable and necessary medical treatment for the effects of the injury. After "the time of the injury" has passed, KRS 342.020(1) bases a worker's eligibility on the presence of disability. Therefore, the issue turns on the intended meaning of the word. Dictum found in *Cavin v. Lake Construction Co.,* 451 S.W.2d 159, 162 (Ky. 1970), does not provide a sufficient rationale for deciding the matter. *See also Combs v. Kentucky River District Health Department,* 194 S.W.3d 823 (Ky.App. 2006).

The 1916 Act provided medical benefits "as may reasonably be required at the time of the injury and thereafter during disability" but placed a dollar limit on the employer's liability. 1916 Ky. Acts ch. 33, § 4. The dollar limit remained but increased under subsequent versions of the Act until the legislature removed it altogether in 1972. 1972 Ky. Acts ch. 78, § 21. In 1994, the legislature added the second sentence of KRS 342.020(1), separating the duration of medical benefits from that of income benefits. 1994 Ky. Acts ch. 181, Part 5, § 17.

The relationship between impairment and disability under the Act has changed over time. From 1972 until December 12, 1996, KRS 342.0011 (previously KRS 342.620) defined "disability" generally as being occupational disability. The definition paraphrased *Osborne v. Johnson,* 432 S.W.2d 800 (Ky.1968), and was based on a number of factors affecting a worker's post-injury earning capacity, one of which was impairment. In 1996, the legislature revised the Act extensively, placing a greater emphasis on impairment as determined under the latest edition of the American Medical Association's *Guides to the Evaluation of Permanent Impairment* (*Guides*).

The Fifth Edition of the *Guides,* page 2, defines impairment as being "a loss, loss of use, or derangement of any body part, organ system, or organ function." Viewed in terms of KRS 342.0011(1), impairment demonstrates that a harmful change in the human organism has occurred. *W.L. Harper Construction Co., Inc. v. Baker,* 858 S.W.2d 202, 204 (Ky.App.1993), and Arthur Larson and Lex K. Larson, *Larson's Workers' Compensation Law,* § 80.03(3) (2005), explain that maximum medical improvement (MMI) refers to the point at which an injury has stabilized and will not be improved by additional treatment although some treatment may still be necessary. Any impairment remaining at that point is viewed as being permanent, so a permanent impairment rating may be assigned using the *Guides.* A harmful change in the human organism may or may not be permanent as was explained in *Robertson v. United Parcel Service,* 64 S.W.3d 284 (Ky.2001). Under the *Guides,* impairment from a harmful change that is permanent may or may not rise to the threshold for a permanent impairment rating.

The post-December 12, 1996, version of KRS 342.0011 does not define disability generally. It defines only the three specific types of disability for which KRS 342.730 permits income benefits. Under KRS 342.0011(11)(a), temporary total disability (TTD) requires findings that the worker has not reached MMI and has not reached a level of improvement that would permit a return to work. As interpreted in *Central Kentucky Steel v. Wise, supra,* it permits a worker whose restrictions preclude the customary type of work to receive the benefit until the date of MMI. Although income benefits continue to compensate workers for occupational disability, a worker is entitled to permanent income benefits if an injury results in a permanent impairment rating as determined under the *Guides. See Adkins v. R & S Body Co.,* 58 S.W.3d 428 (Ky.2001); *Ira A. Watson Dept. Store v. Hamilton,* 34 S.W.3d 48 (Ky.2000). In other words, KRS 342.730(1)(a) and (b) equate the existence of a permanent impairment rating with disability that is permanent and appreciable enough to warrant income benefits.

Unlike KRS 342.0011(11) and KRS 342.730(1), KRS 342.020(1) does not state that eligibility for medical benefits requires proof of a permanent impairment rating, of a permanent disability rating, or of eligibility for permanent income benefits. Moreover, it states clearly that liability for medical benefits exists "for so long as the employee is disabled regardless of the duration of the employee's income benefits." Mindful of the relationship between impairment and disability under the 1996 Act, we conclude that disability exists for the purposes of KRS 342.020(1) for so long as a work-related injury causes impairment, regardless of whether the impairment rises to a level that it warrants a permanent impairment rating, permanent

disability rating, or permanent income benefits.

Finding that the claimant had no permanent impairment rating and was not entitled to future medical treatment, the ALJ relied on evidence that Dr. Kilambi ultimately released him to return to work without restrictions and that Dr. Moskal noted a successful ulnar nerve transposition with intact motor strength, no evidence of chronic regional pain syndrome, and a resolution of the numbness. The evidence clearly permitted a reasonable finding that claimant's disability was not appreciable enough to warrant permanent income benefits, but this was not a case such as *Robertson v. United Parcel Service, supra,* which involved only a temporary flare-up of symptoms from a pre-existing, non-work-related condition.

The claimant's condition was entirely work-related and serious enough to require surgery. He testified that he continued to receive physical therapy when he was deposed, and no medical evidence indicated that future medical treatment would be unreasonable or unnecessary. Therefore, he was entitled to an award of future medical benefits. That does not mean that any particular medical expense would be compensable. Under 803 KAR 25:012; *Mitee Enterprises v. Yates,* 865 S.W.2d 654 (Ky.1993); and *National Pizza Co. v. Curry,* 802 S.W.2d 949 (Ky.App.1991), an employer is free to move to reopen an award to contest the reasonableness or necessity of any medical treatment and also whether the need for treatment is due to the effects of the injury.

The decision of the Court of Appeals is affirmed.

All concur.