# IMPORTANT NOTICE
## <u>NOT TO BE PUBLISHED OPINION</u>

THIS OPINION IS DESIGNATED "NOT TO BE PUBLISHED."
PURSUANT TO THE RULES OF CIVIL PROCEDURE
PROMULGATED BY THE SUPREME COURT, CR 76.28(4)(C),
THIS OPINION IS NOT TO BE PUBLISHED AND SHALL NOT BE
CITED OR USED AS BINDING PRECEDENT IN ANY OTHER
CASE IN ANY COURT OF THIS STATE; HOWEVER,
UNPUBLISHED KENTUCKY APPELLATE DECISIONS,
RENDERED AFTER JANUARY 1, 2003, MAY BE CITED FOR
CONSIDERATION BY THE COURT IF THERE IS NO PUBLISHED
OPINION THAT WOULD ADEQUATELY ADDRESS THE ISSUE
BEFORE THE COURT.  OPINIONS CITED FOR CONSIDERATION
BY THE COURT SHALL BE SET OUT AS AN UNPUBLISHED
DECISION IN THE FILED DOCUMENT AND A COPY OF THE
ENTIRE DECISION SHALL BE TENDERED ALONG WITH THE
DOCUMENT TO THE COURT AND ALL PARTIES TO THE
ACTION.

RENDERED: May 22, 2008
NOT TO BE PUBLISHED

# Supreme Court of Kentucky

FINAL

2007-SC-000341-WC

DATE 6-12-08 EllaGrau:HD.C.

R & L CARRIERS                                                    APPELLANT

V.
ON APPEAL FROM COURT OF APPEALS
2006-CA-002013-WC & 2006-CA-002179-WC
WORKERS' COMPENSATION BOARD NO. 02-78593

DONALD E. GREGORY, JR.,
HON. HOWARD FRASIER, JR.,
ADMINISTRATIVE LAW JUDGE, AND
WORKERS' COMPENSATION BOARD                                       APPELLEES

AND

2007-SC-000360-WC

DONALD E. GREGORY, JR.                              CROSS-APPELLANT

V.
ON APPEAL FROM COURT OF APPEALS
2006-CA-002013-WC & 2006-CA-002179-WC
WORKERS' COMPENSATION BOARD NO. 02-78593

R & L CARRIERS
HON. HOWARD E. FRASIER, JR.,
ADMINISTRATIVE LAW JUDGE, AND
WORKERS' COMPENSATION BOARD                         CROSS-APPELLEES

## MEMORANDUM OPINION OF THE COURT

KRS 342.730(1)(b) provides a formula for calculating a basic income benefit for permanent partial disability. KRS 342.730(1)(c)1 directs the benefit to be multiplied by three if the worker does not retain the physical capacity to return to the type of work performed at the time of injury. KRS 342.730(1)(c)3 increases the multiplier based on limited education.

An Administrative Law Judge (ALJ) awarded the claimant temporary total disability (TTD), permanent partial disability, and rehabilitation benefits for a work-related injury. Having found that the claimant sustained permanent impairment ratings due to physical and psychiatric injuries and also that he lacked the physical capacity to return to the type of work performed at the time of injury, the ALJ calculated separate benefits for the injuries under KRS 342.730(1)(b) and applied the KRS 342.730(1)(c) multipliers to the benefit for the physical injury only. The Workers' Compensation Board (Board) affirmed in all respects except the method for calculating the award. The Court of Appeals found no legal or factual error and affirmed.

We affirm. The ALJ erred under KRS 342.0011(1) by viewing the physical and psychiatric conditions as being separate injuries rather than harmful changes from the same injury. KRS 342.730(1)(b) requires the permanent impairment ratings that an injury causes to be combined into a single permanent impairment rating for the purpose of calculating the worker's disability rating and income benefit. KRS 342.730(1)(c)1 and 3 apply to the benefit calculated under KRS 342.730(1)(b) and, therefore, to the entire disability that the injury causes. The employer has failed to show that the ALJ committed any other legal or factual error. Likewise, the claimant has failed to show an

2

abuse of discretion in the order denying his motion to amend the claim in order to allege a safety violation.

The claimant was born in 1981 and has a tenth-grade education. He worked for the defendant-employer as a forklift driver. On July 12, 2002, the vehicle flipped and landed on his right foot. The injury resulted in the amputation of a majority of the foot, which caused a psychiatric condition.

The claimant filed an application for benefits in April 2004. After a number of attempts to fit him with a suitable prosthesis failed, the ALJ entered an interlocutory order on October 11, 2004, which held the claim in abeyance and awarded TTD benefits "until such time as [the claimant] has been fitted with a workable prosthesis and reaches MMI [maximum medical improvement]." The ALJ removed the claim from abeyance at the claimant's request in April 2005 and permitted additional discovery. On August 1, 2005, after retaining new counsel, the claimant sought leave to amend the claim to allege that the employer's safety violation caused the accident that resulted in his injury. The ALJ denied the motion as untimely.

The ALJ determined ultimately that the claimant gave largely credible testimony regarding the severity of his injury, his difficulty obtaining a suitable prosthesis, his continuing psychological problems, and his continuing physical problems. He had, however, shown little interest in attempting to find work within his restrictions, in completing his GED, or in attempting to live independently. Relying on evidence from the prosthetist, the ALJ found that the claimant did not reach MMI until February 25, 2005, and awarded TTD benefits to that date.

Addressing the extent and duration of disability, the ALJ found the claimant to be

3

partially disabled, with an 18% permanent impairment rating due to the physical injury and a 10% rating due to a resulting psychiatric injury. The ALJ also found that impairment from the physical injury prevented the claimant from returning to work as a forklift driver but that impairment from the psychiatric injury did not. The ALJ concluded on that basis that the multipliers found in KRS 342.730(1)(c) did not apply to the psychiatric impairment. Based on the findings, the ALJ calculated benefits for the two conditions separately under KRS 342.730(1)(b), applying a factor of 1.0 to the physical impairment rating and a factor of 0.85 to the psychiatric impairment rating. The ALJ applied the KRS 342.730(1)(c)1 and 3 to the injury benefit only and then added the physical and psychiatric benefits.

## I. Applying KRS 342.730(1)(b) and (c)

KRS 342.730(1) provides, in pertinent part, as follows:

> 1) Except as provided in KRS 342.732, income benefits for disability shall be paid to the employee as follows:
>
> . . .
>
> (b) For permanent partial disability, sixty-six and two-thirds percent (66- 2/3%) of the employee's average weekly wage but not more than seventy-five percent (75%) of the state average weekly wage as determined by KRS 342.740, multiplied by the permanent impairment rating caused by the injury or occupational disease as determined by "Guides to the Evaluation of Permanent Impairment," American Medical Association, latest edition available, times the factor set forth in the table that follows:

| AMA Impairment | Factor |
|---|---|
| 0 to 5% | 0.65 |
| 6 to 10% | 0.85 |
| 11 to 15% | 1.00 |
| 16 to 20% | 1.00 |
| 21 to 25% | 1.15 |
| 26 to 30% | 1.35 |
| 31 to 35% | 1.50 |
| 36% and above | 1.70 |

4

Any temporary total disability period within the maximum period for permanent, partial disability benefits shall extend the maximum period but shall not make payable a weekly benefit exceeding that determined in subsection (1)(a) of this section. Notwithstanding any section of this chapter to the contrary, there shall be no minimum weekly income benefit for permanent partial disability and medical benefits shall be paid for the duration of the disability.

(c) 1. If, due to an injury, an employee does not retain the physical capacity to return to the type of work that the employee performed at the time of injury, the benefit for permanent partial disability shall be multiplied by three (3) times the amount otherwise determined under paragraph (b) of this subsection, but this provision shall not be construed so as to extend the duration of payments; or

. . .

3. Recognizing that limited education and advancing age impact an employee's post-injury earning capacity, an education and age factor, when applicable, shall be added to the income benefit multiplier set forth in paragraph (c)1. of this subsection. If at the time of injury, the employee had less than eight (8) years of formal education, the multiplier shall be increased by four-tenths (0.4); if the employee had less than twelve (12) years of education or a high school General Educational Development diploma, the multiplier shall be increased by two-tenths (0.2); if the employee was age sixty (60) or older, the multiplier shall be increased by six-tenths (0.6); if the employee was age fifty-five (55) or older, the multiplier shall be increased by four-tenths (0.4); or if the employee was age fifty (50) or older, the multiplier shall be increased by two-tenths (0.2).

KRS 342.730(1)(b) provides an income benefit that is based on "the permanent impairment rating caused by the injury" as determined by the Guides to the Evaluation of Permanent Impairment (Guides). KRS 342.0011(1) defines the term "injury" as being a work-related traumatic event that produces a harmful change in the human organism. In other words, it refers to the traumatic event. As illustrated in Thomas v. United Parcel Service, 58 S.W.3d 455, 458-59 (Ky. 2001), the Fifth Edition of the

5

Guides contains a Combined Values Table on pages 604-06, which is used to combine the permanent impairment ratings from multiple harmful changes into a single permanent impairment rating for the injury. Reading the table and determining a combined permanent impairment rating requires no medical expertise, just as reading a conversion table required no medical expertise in Caldwell Tanks v. Roark, 104 S.W.3d 753 (Ky. 2003). The product of the permanent impairment rating and the statutory factor is the worker's disability rating, which is used to calculate the basic income benefit under KRS 342.730(1)(b) and to determine the duration of the award under KRS 342.730(1)(d). KRS 342.730(1)(c) applies to the entire benefit.

## II. Psychiatric impairment

The employer complains that the ALJ relied on the permanent impairment rating that Dr. Granacher assigned to the psychiatric condition but relied on Drs. Underwood and Wagner when concluding that the impairment resulted entirely from the injury. Dr. Granacher stated that the injury exacerbated a pre-existing anxiety disorder that made the claimant susceptible to stress and resulted in a 10% permanent impairment rating. He attributed a 5% rating to the injury and a 5% rating to pre-existing factors. Dr. Underwood assigned a 16-18% rating and, like Dr. Wagner, attributed the entire psychiatric impairment to the work-related injury.

The ALJ acknowledged that the claimant experienced events that were stressful when in high school but noted that he had never been diagnosed with anxiety or depression or received any counseling or other treatment until after the work-related injury. Nor did any evidence indicate that symptoms he might have experienced when in high school continued to exist when the injury occurred. Noting that even Dr.

6

Granacher did not state that a psychiatric impairment was active immediately before the injury, the ALJ concluded that the injury and resulting amputation were what caused the need for psychiatric treatment.

The claimant had the burden to prove every element of his claim, including the amount of permanent impairment that the injury caused. KRS 342.285 designates the ALJ as the finder of fact, and nothing requires an ALJ to rely entirely on the opinions of one physician. Special Fund v. Francis, 708 S.W.2d 641, 643 (Ky. 1986), explains that a decision favoring the party with the burden of proof may not be disturbed if it is reasonable under the evidence. The disputed finding may not be disturbed because no overwhelming evidence required a finding that the injury caused less than a 10% permanent impairment rating due to the psychiatric condition.

### III. Post-injury physical capacity

The employer asserts that the claimant retained the physical capacity to return to work as a forklift driver as shown by "undisputed medical evidence." Therefore, the ALJ erred by applying the KRS 342.730(1)(c) multipliers. We disagree.

The employer bases the argument on a supplemental report from Dr. Sheridan, which stated that the claimant's work restrictions would be lifted if he obtained an appropriate prosthetic device. Dr. Sheridan's initial report indicated that the claimant was at MMI and recommended extensive "permanent" work restrictions. Nothing in the report indicated that the restrictions were temporary or conditioned on the lack of an appropriate prosthesis. In fact, the report noted that the claimant had just received a new prosthesis and contained nothing to indicate that it was not appropriate. It was reasonable under the circumstances for the ALJ to rely on the initial report and infer

7

that even an appropriate prosthesis would not enable the claimant to function outside the restrictions. The claimant testified that he could not.

Commonwealth, Transportation Cabinet v. Guffey, 42 S.W.3d 618, 621 (Ky. 2001), is but one in a line of cases indicating that a worker's testimony is competent evidence of his physical condition and ability to perform various activities both before and after a work-related injury. The ALJ found the claimant's testimony concerning the physical requirements of his job and his ability to perform only some of them after the injury to be credible and convincing. In reaching the conclusion, the ALJ noted that none of the physicians who thought that he might be able to return to work without restrictions evaluated him after he was fitted with the latest prosthesis. The decision must be affirmed because no overwhelming evidence showed it to be unreasonable.

### IV. Vocational Benefits

KRS 342.710(1) states that a primary purpose of Chapter 342 is to restore injured workers to gainful employment. Subsection (3) provides rehabilitation services to those who are unable to perform work for which they have previous training or experience. Wilson v. SKW Alloys, Inc., 893 S.W.2d 800 (Ky. App. 1995), explains that "work for which [an individual] has previous training or experience" means work that bears a reasonable relationship to the individual's experience and background. The term considers the type of work that the individual performed at the time of injury as well as the individual's age, education, income level, earning capacity, vocational aptitude, mental and physical abilities, and other relevant factors both at the time of injury and at the time the individual reaches MMI.

The employer asserted that the claimant's request for rehabilitation services was

disingenuous; that he retained the physical capacity to work as a forklift driver or perform other work; and that he had made no earnest attempt to find other work. The claimant's previous work experience was as a landscaper, garbage tipper, concrete laborer and manufacturing laborer. He worked part-time in high school as a cook and cashier. Relying largely on the claimant's "credible" testimony of his physical restrictions and difficulties with standing constantly and walking, the ALJ determined that he was unable to perform work for which he had previous training or experience. The decision must be affirmed because the employer has pointed to no overwhelming evidence that shows it to be unreasonable.

## V. TTD benefits

As construed in Central Kentucky Steel v. Wise, 19 S.W.3d 657, 659 (Ky. 2000), and Magellan Behavioral Health v. Helms, 140 S.W.3d 579 (Ky. App. 2004), KRS 342.0011(11)(a) and KRS 342.730(1)(a) entitle a worker to TTD benefits until the worker reaches MMI or is able to return to customary work. We have affirmed findings indicating that the claimant was unable to return to customary work; therefore, his right to TTD benefits ended when he reached MMI. The Fifth Edition of the Guides, page 19, indicates that a medical condition is at MMI when it is "well stabilized and unlikely to change substantially in the next year with or without medical treatment." KRS 342.020(1) requires an employer to pay the expenses for reasonable and necessary medical, surgical, and hospital treatment, including medical appliances. Thus, it views a prosthesis as being a form of medical treatment.

The claimant had difficulty finding a suitable prosthesis and tried several different models. His treating physician, Dr. Mook, noted continued problems with the prosthesis

9

on February 6, 2004. Dr. Sheridan evaluated the claimant on February 10, 2004, and found him to be at MMI "with or without an ideal prosthetic device." Dr. Mook noted on September 17, 2004, that the claimant "needs his prosthesis to be working and fitting to reach MMI."

The interlocutory opinion and award rendered in October 2004 stated that the claimant would not reach MMI until he obtained a suitable prosthesis. It ordered the employer to pay TTD until that time, with the condition that benefits would be suspended during any period that the claimant delayed the process. The employer paid TTD until January 18, 2005, when the claimant received a new "shoe-n-shoe" prosthesis. The ALJ relied ultimately on testimony from the prosthetist, who did not advise the claimant to use the device on a full-time basis until February 25, 2005, and did not release him to return on an "as needed" basis until July 28, 2005. The ALJ determined that he reached MMI on February 25, 2005.

The employer asserts that the ALJ erred because the definition of MMI is purely medical and does not have a functional or vocational component. KRS 342.020(1) considers medical appliances to be a form of medical treatment. Kentucky River Enterprises, Inc. v. Elkins, 107 S.W.3d 206 (Ky. 2003), stands for the principle that the proper interpretation of the Guides is a medical question. Dr. Mook stated that the claimant would not reach MMI until his prosthesis worked and fit. Although Dr. Sheridan disagreed, he failed to show that Dr. Mook misapplied the Guides or based his opinion on vocational rather than medical considerations. The decision regarding the date of MMI must be affirmed because no overwhelming evidence shows it to be unreasonable or based on improper considerations.

## VI. Denial of motion to amend

KRS 342.165(1) permits the compensation for a work-related injury to be increased by 30% if the accident that caused it resulted "in any degree" from the employer's intentional failure to comply with a specific safety statute or regulation.

The claimant filed his application for benefits in April 2004. After retaining new counsel, he sought leave to amend the claim on August 1, 2005, to allege a safety violation by his employer. The order of September 1, 2005, denied the motion as untimely. It explained that the facts concerning the allegation were known much earlier; that the claimant made no showing of reasonable cause or excusable neglect for the delay in raising the matter; and that a mere change of counsel was an insufficient basis to permit an amendment at that time. The claimant argues presently that the ALJ erred because the delay caused no apparent prejudice to the employer; that CR 15.01 would have permitted the amendment; and that the decision was contrary to the beneficent purpose of the Workers' Compensation Act, particularly the purpose of KRS 342.165(1).

CR 15.01 provides as follows:

> A party may amend his pleading once as a matter of course at any time before a responsive pleading is served or, if the pleading is one to which no responsive pleading is permitted and the action has not been placed on the trial calendar, he may so amend it at any time within 20 days after it is served. Otherwise a party may amend his pleading only by leave of court or by written consent of the adverse party; and leave shall be freely given when justice so requires. A party shall plead in response to an amended pleading within the time remaining for response to the original pleading or within 10 days after service of the amended pleading, whichever period may be longer, unless the court otherwise orders.

KRS 342.210(1) requires a worker to raise all accrued causes of action against

11

the employer during the pendency of a claim or waive them.  Caldwell v. Bethlehem Mines Corp., 455 S.W.2d 67, 68-69 (Ky. 1970), noted the court's liberal discretion under CR 15.01 and determined that there should be no less liberality in the rules of procedure for workers' compensation cases.  Sexton v. Sexton, 125 S.W.3d 258, 272 (Ky. 2004), explains that the test for an abuse of discretion is whether the decision was arbitrary, unreasonable, unfair, or unsupported by sound legal principles.

Although 803 KAR 25:010 prescribes a schedule for taking proof and holding a benefit review conference, an ALJ has some latitude to adjust to the circumstances.  An ALJ may hold a claim in abeyance until the worker reaches MMI, such as occurred in this case, or an ALJ may extend the time for taking proof or reopen the proof when circumstances warrant.  The claimant did not move to amend his claim until more than 13 months after he filed an application for benefits.  The only apparent reason for the delay was that he retained new counsel, a reason insufficient to show that the decision to deny the motion was an abuse of discretion.

## VII. Conclusion

The claimant's injury produced both a physical and a psychiatric permanent impairment rating.  He was entitled to have his income benefit based on both of them.  On remand, the ALJ must consult the Guides and combine the 18% and 10% permanent impairment ratings. The combined permanent impairment rating and corresponding factor determine his disability rating for the purpose of calculating the basic income benefit under KRS 342.730(1)(b) and determining the duration of his award under KRS 342.730(1)(d).  After calculating the basic income benefit, the ALJ must multiply it by 3.2 as required by KRS 342.730(1)(c)1 and 3 and the facts.

12

The decision of the Court of Appeals is affirmed.

All sitting. All concur.

COUNSEL FOR APPELLANT,
R & L CARRIERS:

DAVID D. BLACK
DINSMORE & SHOHL LLP
1900 CHEMED CENTER
255 EAST FIFTH STREET
CINCINNATI, OH 45202


COUNSEL FOR APPELLEE,
DAVID E. GREGORY, JR.:

STUART E. ALEXANDER III
KATHLEEN M. W. SCHOEN
TILFORD, DOBBINS, ALEXANDER, BUCKAWAY & BLACK, LLP
401 WEST MAIN STREET
SUITE 1400
LOUISVILLE, KY 40202