RENDERED: MAY 27, 2022; 10:00 A.M.
NOT TO BE PUBLISHED

# Commonwealth of Kentucky

# Court of Appeals

NO. 2021-CA-1403-WC

REGAL PETROLEUM CO., INC.                                           APPELLANT

PETITION FOR REVIEW OF A DECISION
v.                    OF THE WORKERS' COMPENSATION BOARD
ACTION NO. WC-18-01569

TERRY KIDD; HONORABLE
GRANT STEWART ROARK,
ADMINISTRATIVE LAW JUDGE;
AND WORKERS' COMPENSATION
BOARD                                                               APPELLEES

OPINION
AFFIRMING

** ** ** ** **

BEFORE: CETRULO, DIXON, AND LAMBERT, JUDGES.

CETRULO, JUDGE: Appellant Regal Petroleum Co., Inc. ("Regal") appeals the

Workers' Compensation Board ("Board") opinion entered November 5, 2021. The

Board's opinion affirmed Honorable Grant S. Roark's ("ALJ") order and opinion

granting temporary total disability ("TTD") benefits to Appellee Terry Kidd ("Terry").

## FACTUAL AND PROCEDURAL HISTORY

Terry began working for Regal as a tanker truck driver in 2010.[1]  In that role, he drove semi-trucks with tanker trailers to oil well sites, tested the crude oil stored there, and loaded it into the tanker using a heavy hose.  He would then drive the filled tanker to a separate location and place the oil in storage tanks.  This role required that he regularly climb stairs to the top of storage tanks.  He was an hourly employee, who typically worked 60 to 70 hours per week and loaded and transported multiple loads of crude oil per day.

On June 26, 2018, while Terry was dragging a 16-foot hose to his tanker at an oil site, he turned and heard a loud pop in his right knee.  His knee gave out and he fell and hit his right shoulder on a rock berm.[2]  The right shoulder claims are not on appeal; therefore, we will focus on the claims involving the right knee injury.

Terry immediately reported the incident to Regal but drove the unfilled tanker back to the storage site.  Starting the next day, he remained off

___

[1] Terry continued to work for Regal until his termination in 2019, aside from a one-year hiatus in which Terry had a payment dispute with a third party working for Regal.

[2] The ALJ rendered the underlying claims involving the right shoulder injury to be non-work-related and noncompensable.

work until October 31, 2018.  Upon his return to work, Terry took on a "light duty" role with restrictions on lifting more than five pounds, pulling, and conducting work over his head.  His new physical capability allowed him to work only 23 hours per week and load and transport only one load of oil per day.  Regal terminated Terry on May 9, 2019, and he has not returned to work since.

Terry first saw his family practitioner, Rita Logsdon, APRN ("Nurse Logsdon") on August 17, 2018, nearly two months after the incident.  He testified at his March 2019 deposition that the lengthy timespan between the injury and that first appointment was because he believed it was only a strain and would heal on its own.  By August, however, Terry had not seen the improvement he hoped for and visited Nurse Logsdon.  At the appointment, Nurse Logsdon ordered an x-ray of his right knee and upon viewing those results, ordered an MRI.  Following the MRI, Nurse Logsdon referred him to an orthopedic surgeon, Dr. Michael Krueger ("Dr. Krueger").  A few days later, Dr. Krueger concluded there was a complex tear of the entire medial meniscus, which appeared macerated; tricompartmental osteoarthritis; and strain of the popliteal muscle with tenosynovitis and reactive edema.  He also diagnosed shoulder injuries requiring surgery.

In September of 2018, Dr. Krueger placed Terry off work pending surgery.  At the appointments on October 9 and October 26, 2018, Dr. Krueger reiterated that Terry should remain off work until he underwent surgery, although

he did not specify to which surgery (knee or shoulder) the directive pertained. Terry underwent his shoulder surgery first, then once he healed from that surgery, he was referred to Dr. Mark Smith, another orthopedic surgeon ("Dr. Smith"), who performed the right partial medial meniscectomy on May 26, 2020.

Following a benefit review conference in June 2019, the ALJ conducted a hearing to discuss the causation and work-relatedness of Terry's injuries. Because the surgeries had not been completed and the full picture of the injuries was not yet in focus, the ALJ rendered an interlocutory opinion in August 2019. The interlocutory opinion stated that Terry's right knee injury was work-related and compensable; however, the ALJ placed the matter in abeyance until Terry reached maximum medical improvement ("MMI"). The ALJ made no findings regarding TTD benefits for the knee injury and explained that

> plaintiff's request for TTD benefits to this point has been primarily associated with his request for treatment of his right shoulder, [therefore] the record is not yet clear whether plaintiff is or will be taken off work for his right knee condition. As such, no award of TTD benefits is made herein, but the ALJ will entertain any motion for TTD benefits associated with the compensable right knee injury.

In January 2021, once Terry had recovered from both surgeries, his evaluating physician, Dr. James Farrage ("Dr. Farrage") completed his independent medical exam. The exam included a record review, medical history review, and physical examination. Dr. Farrage reported that he did not believe

-4-

further diagnostic studies were necessary at that time; however, there was a high probability that Terry would eventually need a right total knee arthroplasty. He further noted that the patient's overall clinical presentation and historical account were consistent with the proposed mechanism of injury. Dr. Farrage assigned a 3% whole person impairment rating for the knee injury, according to the *American Medical Association Guides to the Evaluation of Permanent Impairment*, Fifth Edition (the "Guides"). In a supplemental report, dated May 26, 2021, Dr. Farrage concluded that Terry did not retain the physical capacity to return to his previous job duties without risk of significant exacerbation of symptoms and potential reinjury.

Thereafter, in July 2021, the ALJ rendered the final opinion and order, largely relying upon Dr. Farrage's observations. In the opinion, the ALJ noted that he reviewed additional evidence and confirmed that Terry's right knee injury was work-related and compensable. The ALJ awarded PPD benefits based upon the 3% impairment rating assessed pursuant to the Guides, which was enhanced by the 3-times multiplier set forth in KRS[3] 342.730(1)(c)1.

Regarding the date Terry reached MMI and the corresponding TTD benefits, the ALJ found the following:

> The next issue becomes whether plaintiff is entitled to any additional TTD benefits beyond those already paid.

---

[3] Kentucky Revised Statute.

The defendant maintains plaintiff is not entitled to TTD benefits based only on his compensable right knee claim prior to [the surgery date]. Prior to that date, the defendant maintains plaintiff was off work only because of his noncompensable right shoulder condition. However, nothing in the record indicates plaintiff's right knee condition after the injury was any better than he was on [the surgery date]. In other words, the meniscal tear he suffered on the date of injury remained and he was not at maximum medical improvement until after he recovered from the corrective surgery. As such, plaintiff was off work, not at maximum medical improvement, and not able to perform his regular or customary duties from September 19, 2018 until the date he was released by Dr. Smith on September 2, 2020. Accordingly, plaintiff is entitled to TTD benefits at the rate of $557.02 per week from September 19, 2018 through September 2, 2020, with the defendant to take a credit for all amounts paid in TTD to date, and with interest at 6% on all past due amounts.

Regal then filed a petition for reconsideration and argued the ALJ erred by improperly shifting the burden of proof regarding the TTD benefit award. Specifically, Regal claimed the ALJ failed to establish that Terry was off work starting September 19, 2018, due to his work-related knee injury. Regal claimed Dr. Krueger's instruction that Terry remain off work at that time was based solely on Terry's right shoulder injury. Regal also argued that the ALJ improperly reversed his 2019 interlocutory opinion under *Bowerman v. Black Equipment Company*, 297 S.W.3d 858 (Ky. App. 2009). However, Regal's arguments did not persuade the ALJ, and he overruled the petition.

On appeal to the Board, Regal put forth the same arguments. In the Board opinion entered November 5, 2021, the Board affirmed the ALJ. Specifically, the Board found that the burden properly remained on Terry and the ALJ's determination that Terry met the burden was supported by substantial evidence. Additionally, the Board found the *Bowerman* holding was inapplicable.

Regal now appeals the Board's opinion, restating the same arguments: (1) the Board erred when it affirmed the ALJ's award of TTD benefits prior to the date of surgery; and (2) the Board erred when it found *Bowerman* was not applicable.

**STANDARD OF REVIEW**

When we review a decision of the Board, we will reverse only where the Board has overlooked or misconstrued the controlling law or so flagrantly erred in evaluating the evidence that a gross injustice has occurred. *Daniel v. Armco Steel Co., L.P.*, 913 S.W.2d 797, 797-98 (Ky. App. 1995). Ultimately, we must review the ALJ's decision to properly analyze that of the Board.

The Kentucky Supreme Court has held that when the ALJ finds in favor of the party with the burden of proof, as here, then the reviewing court will affirm the ALJ's decision if it is supported by substantial evidence. *Special Fund v. Francis*, 708 S.W.2d 641, 643 (Ky. 1986) ("When the decision of the fact-finder favors the person with the burden of proof, his only burden on appeal is to show

that there was some evidence of substance to support the finding, meaning evidence which would permit a fact-finder to reasonably find as it did.") In addition, as the finder of fact, the ALJ – not this Court and not the Board – has sole "discretion to determine the quality, character, and substance of the evidence." *Whittaker v. Rowland*, 998 S.W.2d 479, 481 (Ky. 1999) (quoting *Paramount Foods, Inc. v. Burkhardt*, 695 S.W.2d 418, 419 (Ky. 1985)). Not only does the ALJ weigh the evidence, but the ALJ may also choose to believe or disbelieve any part of the evidence regardless of its source. *Id.* at 481 (quoting *Caudill v. Maloney's Discount Stores*, 560 S.W.2d 15, 16 (Ky. 1977)).

## ANALYSIS

First, Regal argues the Board erred when it affirmed the ALJ's award of TTD benefits prior to the date of Terry's knee surgery. To clarify, Regal did pay TTD benefits to Terry from the date of his knee surgery through the date Terry reached MMI; Regal simply does not believe it should be required to pay TTD benefits prior to the date of surgery. We do not agree.

Specifically, Regal claims that the ALJ improperly shifted the burden of proof because it claims Terry did not prove both prongs of the requisite analysis. KRS 342.0011(11)(a) defines TTD using two prongs: "[TTD] means the condition of an employee who [1] has not reached maximum medical improvement from an injury and [2] has not reached a level of improvement that would permit a return to

employment[.]" While Regal agrees that Terry did satisfy the first prong of the definition, it argues that Terry failed to prove he had not reached a level of improvement that would permit a "return to employment."

However, the Board explained that the burden of proof remained on Terry, and that the ALJ found Terry had successfully proved the essential elements of his cause of action. Therefore, the Board recognized its main question was whether substantial evidence of record supported the ALJ's decision.[4]

The Board then explained that the ALJ properly analyzed Terry's TTD entitlement, using both prongs of the analysis. The Board acknowledged that this Court has found an employee to be entitled to TTD benefits until MMI is reached, as long as the employee remains disabled from his customary – *i.e.*, pre-injury – work. *Magellan Behavioral Health v. Helms*, 140 S.W.3d 579, 581 (Ky. App. 2004). Further, our Supreme Court interpreted "return to employment" to mean "a return to the type of work which is customary for the injured employee or that which the employee had been performing prior to being injured." *Id.* (citing *Central Kentucky Steel v. Wise*, 19 S.W.3d 657, 659 (Ky. 2000)). Our Supreme Court further commented that "[i]t would not be reasonable to terminate the benefits of an employee when he is released to perform minimal work but not the

---

[4] Our Supreme Court defined "substantial evidence" as evidence of relevant consequence having the fitness to induce conviction in the minds of reasonable persons. *Smyzer v. B.F. Goodrich Chemical Co.*, 474 S.W.2d 367, 369 (Ky. 1971).

type that is customary or that he was performing at the time of his injury." *Central Kentucky Steel*, 19 S.W.3d at 659.[5]

Using that caselaw as a guide, the Board analyzed the ALJ's findings of fact and concluded that the ALJ had considered substantial evidence. As to the first prong of the TTD definition, the ALJ had determined Terry did not reach MMI until after his knee surgery, when Dr. Smith released him on September 2, 2020. As for the second prong of the TTD definition, the ALJ had found Terry was not able to work at his full, pre-injury capacity from September 19, 2018, (the date Dr. Krueger placed Terry off work) until September 2, 2020. The ALJ had emphasized that Terry could not perform his regular work duties after September 19, 2018, based upon Dr. Krueger's analysis. Despite Terry's return to work from October 31, 2018, through May 9, 2019, his activities were heavily restricted, and he went from working 60 to 70 hours per week to 23 hours per week.[6] Additionally, the ALJ noted in the interlocutory opinion that Terry was undergoing knee treatments, including cortisone injections, beginning September 19, 2018.

---

[5] To expound, our Supreme Court has clarified that "return to employment" does not necessitate that the employee return to the exact pre-injury position. In *Trane Commercial System v. Tipton*, 481 S.W.3d 800 (Ky. 2016), upon reaching MMI, the employee returned to work in a new role. The employee claimed that new role "was not the type of work she was performing at the time of her injury"; however, our Supreme Court noted that the employee had bid to return to the exact role she held prior to the injury, she just did not get that position and had to work in another role. The Supreme Court held such a circumstance was "return to employment." Here, that is not so.

[6] Additionally, Terry testified that he was never formally cleared to go back to work; however, he was falling behind on his bills and decided to return to light duty to quell the financial stress.

-10-

Summarily, the ALJ detailed that Terry had not reached MMI nor "returned to employment," as defined in *Magellan* and *Central Kentucky Steel*, from September 19, 2018, through September 2, 2020. The Board therefore concluded that the ALJ had adequately analyzed the necessary prongs to establish TTD benefits and substantially supported its findings. The Board properly analyzed the TTD caselaw and thoroughly detailed how the record applied to those rules. Such analysis does not constitute a flagrant err or "gross injustice." *Daniel*, 913 S.W.2d at 798.

Second, Regal argues that the Board erred when it found *Bowerman* was not applicable. Again, we do not agree. The Board explained that in *Bowerman*, this Court held that where an ALJ reverses his or her prior dispositive factual findings in an interlocutory opinion – absent the introduction of new evidence, fraud, or mistake – the final opinion would be arbitrary, unreasonable, unfair, and unsupported by sound legal principals. *Bowerman*, 297 S.W.3d at 867. The Board explained that such circumstances were not present here.

In *Bowerman*, the ALJ found in her interlocutory opinion that the claimant was "able to find work consistently under normal employment conditions" and denied the claimant's claim for TTD during the abeyance period. *Id.* at 863. However, when the ALJ removed the claim from abeyance, she found that the claimant had reached MMI prior to the interlocutory opinion (which she

-11-

had not found in the interlocutory opinion) and awarded TTD benefits through the date of MMI. *Id.* at 865. This Court then reversed the ALJ because she had altered the interlocutory findings of fact without a finding of new evidence, fraud, or mistake. *Id.* at 867.

Alternatively, here, the ALJ did not determine whether Terry was entitled to TTD benefits for his knee injury in the interlocutory opinion. The ALJ simply stated that at the time the interlocutory opinion was entered, the evidence primarily related to the shoulder injury. In fact, the ALJ explicitly stated he was not making a determination regarding the knee injury and was keeping open the possibility of awarding TTD benefits related to the knee injury upon a later request. Therefore, the Board correctly found that *Bowerman* was not applicable, and Terry was permitted to make a request for those benefits. Ultimately, the Board found that the ALJ was permitted to make such an award. The Board properly construed the law and did not overlook the controlling law or so flagrantly err in evaluating the evidence that a gross injustice has occurred. *Daniel*, 913 S.W.2d at 798. Therefore, we do not find the Board to have erred in its determination.

## CONCLUSION

For these reasons, we AFFIRM the Board's decision to uphold the ALJ's opinion and order granting TTD benefits to Terry for September 19, 2018, through September 2, 2020.

ALL CONCUR.

BRIEF FOR APPELLANT:

Stephanie D. Ross
Fort Mitchell, Kentucky

BRIEF FOR APPELLEE:

Michael Thomas Kunjoo
Lexington, Kentucky