PIKE COUNTY BOARD OF EDUCATION, Appellant

v.

Randall MILLS; Hon. James L. Kerr, Administrative Law Judge; and Workers' Compensation Board, Appellees.

No. 2008–CA–000149–WC.

Court of Appeals of Kentucky.

Aug. 1, 2008.

Robert J. Greene, Pikeville, KY, for appellee, Randall Mills.

Before KELLER and THOMPSON, Judges; GRAVES,[1] Senior Judge.

## OPINION

THOMPSON, Judge.

The Pike County Board of Education (Board of Education) appeals from a decision of the Workers' Compensation Board affirming the Administrative Law Judge's award of permanent partial disability and medical benefits to Randall Mills for an injury incurred to his left hand and hip. The Board of Education challenges the award on the basis that Mills was not a Board of Education employee on the date of his injury and that the ALJ erroneously found that Mills was a seasonal employee and, therefore, calculated his benefits in accordance with KRS 342.140. We agree with the Workers' Compensation Board that there was no error and affirm.

Mills, who has a degree in mathematics and work experience as a high school band color guard instructor, was approached by Robert Scheeler, the band director at Shelby Valley High School, to instruct the color guard section of the high school band. At that time, Mills was also employed as a post-secondary education math instructor. Scheeler offered, and Mills accepted, a verbal contract providing that he would be paid $2,000 through the Shelby Valley Band Boosters Association and a stipend of $600 through the Pike County Board of Education. Pursuant to the agreement, Mills' would begin work in the summer of 2006 and end in November 2006, at the end of the competitive season.

Brian T. Reed, Pikeville, KY, for Appellant.

---

1. Senior Judge John W. Graves sitting as Special Judge by assignment of the Chief Justice pursuant to Section 110(5)(b) of the Kentucky Constitution and KRS 21.580.

On July 13, 2006, Mills began work with the band. On July 19, 2006, during a color guard rehearsal in the school gym, Mills slipped and fell. He experienced extreme pain and was transported to the hospital by ambulance. He sustained a right hip fracture that required surgical treatment.

Mills signed an employment contract dated October 16, 2006, that was signed by Scheeler, as band director, and Zelda Hall, as the Shelby Valley Band Parent Treasurer. On November 16, 2006, he entered into an extra-service contract with the Pike County school system that was signed by Superintendent Robert Wagner and, on that same date, received a letter of hire from Wagner. Additional evidence of his employment included a W–2 from the Pike County Board of Education indicating that Mills had wages of $600 in 2006 and a site-based council agenda indicating that Mills had been hired as the replacement for the prior Auxiliary Band Director.

The ALJ rejected the Board of Education's contention that Mills was not an employee at the time of his injury. As a finding of fact the ALJ stated:

If the Shelby Valley Band and its color guard had waited upon the school board mechanism to approve plaintiff's employment, the season would already have been over. It is apparent to the undersigned that everyone was comfortable with plaintiff beginning employment on July 13, 2006, and even Principal Johnson testified that he was aware that the plaintiff was performing his duties for the band prior to the site based council meeting. All the written documentation herein supports the plaintiff's position of employment.

■ On appeal, our standard of review of a decision of the Workers' Compensation Board "is to correct the Board only where the ... Court perceives the Board has overlooked or misconstrued controlling statutes or precedent, or committed an error in assessing the evidence so flagrant as to cause gross injustice." *Western Baptist Hosp. v. Kelly,* 827 S.W.2d 685, 687–88 (Ky.1992). The burden of persuasion is on the claimant to prove every element of a workers' compensation claim. *Wolf Creek Collieries v. Crum,* 673 S.W.2d 735 (Ky.App.1984).

■ The initial issue raised by the Board of Education is essentially one of law. It contends that Mills was not hired pursuant to the procedures set forth in the Kentucky Education Reform Act, KRS 160 *et. seq.,* and, therefore, was not an employee for the purpose of the remedies provided under the Kentucky Workers' Compensation Act. Central to the Board of Education's argument is its reliance on the language contained in KRS 160.380 which provides that all appointments and promotions are to be made by the superintendent. Similar provisions can be found elsewhere in the Kentucky Education Reform Act, including KRS 160.370 and KRS 160.390. In *Tolliver v. Harlan County Bd. of Education,* 887 F.Supp. 144 (E.D.Ky.1995), the federal court held that KRS 160.380 vests exclusive authority to appoint or promote individuals in the superintendent; therefore, the Board of Education has no authority to appoint the plaintiff as an assistant superintendent. *Id.* at 147–148.

The Board of Education argues that because only the superintendent could have hired Mills, that the oral promises made by the band director were inconsequential. It further relies on the proposition that a board of education cannot become liable under implied agreements and must act only through its records. *Ramsey v. Board of Education of Whitley County,* 789 S.W.2d 784 (Ky.App.1990). Following the Board of Education's reasoning, Mills was not hired as an employee of the Board

of Education until November 16, 2006, when he received notification from the superintendent that he had been hired as the Band Auxiliary Sponsor.

■ *Tolliver* was an action pursuant to 42 U.S.C. § 1983, thus the Workers' Compensation Act was not implicated. The Board of Education would have this Court ignore the unambiguous language contained in KRS 342.640, which defines various classes of employees for purposes of the Act. In relevant part, it provides:

The following shall constitute employees subject to the provisions of this chapter
. . .

(1) Every person, including a minor, whether lawfully or unlawfully employed, in the service of an employer under any contract of hire or apprenticeship, express or implied, and all helpers and assistants of employees, whether paid by the employer or employee, if employed with the knowledge, actual or constructive, of the employer;

. . . .

(3) Every person in the service of the state or any of its political subdivisions or agencies, or of any county, city of any class, school district . . . under any contract of hire, express or implied, and every official or officer of those entities, whether elected or appointed, while performing his official duties shall be considered an employee of the state. . . .

The legislative intent in enacting KRS 342.640 was to relax the rigid requirements of an employment contract. "KRS 342.640(4) does not refer to a contract for hire. It protects workers who are injured while performing work in the course of an employer's business by considering them to be employees despite the lack of a formal contract for hire, unless the circumstances indicate that the work was performed with no expectation of payment or that the worker was a prisoner." *Hub-*

*bard v. Henry*, 231 S.W.3d 124, 130 (Ky. 2007).

■ It is a well recognized rule of statutory construction that when two statutes pertain to the same subject matter, a specific statute will preempt a general statute. *Boyd v. C & H Transportation*, 902 S.W.2d 823 (Ky.1995). KRS 342.640 expressly states when a person shall be deemed an employee of a school district for purposes of workers' compensation coverage. It not only recognizes implied contracts of hire but completely omits any reference to the administrative hiring practices to be invoked under the Kentucky Education Reform Act. KRS 342.640 specifically deals with the definition of an employee within the context of the Workers' Compensation Act; therefore, it prevails.

We agree with the ALJ and the Board that Mills was an employee of the Board of Education on the date of his injury which was confirmed by the documents subsequently executed. As the Board noted, significant to this determination is that "the entire agreed upon remuneration was paid, including the $600 stipend originally promised by the band director, by the Board of Education."

■ The Board of Education's final argument is that Mills was not a seasonal employee because, according to Mill's testimony, the work of a color guard instructor can be carried on throughout the year.

■ The question of whether particular work is seasonal depends on the circumstances of each case and the focus of the inquiry is "what makes an occupation, on a case-by-case basis, actually and exclusively seasonal." *Travelers Insurance Co. v. Duvall*, 884 S.W.2d 665, 667 (Ky.1994). The effect of seasonal employment in the calculation of the employee's average weekly

wage was explained in *Department of Parks v. Kinslow,* 481 S.W.2d 686, 688–689 (Ky.1972):

> The overriding purpose of workmen's compensation is to give recompense to an injured employee (or in this instance the widow of the deceased employee) for the loss of earning capacity due to a work-connected accident, but there are limitations. The apparent intent of the legislature in enacting KRS 342.140(2) was to reduce the amount of recovery if the employment was with a business carried on naturally only for a particular season of the year. The seasonal worker should not receive the same compensation as that of a nonseasonal worker. In the present instance Kinslow remained idle, so far as work in compensation-covered employment was concerned, six months out of the year. Under the board's award claimant would receive as compensation $2438 for 12 months, while Kinslow earned only $1829.10 for the 12 months before the accident. It might be argued that the same result (that benefits could exceed earnings) could arise where a person without previous earnings worked for a short while in nonseasonal employment when he was involved in an accident. That is true. But the compensation law clearly permits that. Valid complaint cannot be made that a seasonal worker has no way to establish a base pay equal to a nonseasonal worker because all of the seasonal worker's wages-those earned in seasonal work as well as those earned in regular employment-for twelve months next before the injury or death are used to determine the average weekly wage. KRS 342.140(2).

The calculation of Mills' average weekly wage was complicated by the relatively short duration of his work for the Board of Education prior to his injury and his minimal pay compared to his employment as a mathematics teacher. Our review is hampered by the lack of findings of fact by the ALJ who merely stated as follows:

> Average weekly wage is somewhat problematic as plaintiff does not fit comfortably under any part of the statute. The Administrative Law Judge believes that the best estimate of plaintiff's average weekly wage in 2006 is his own calculation that he earned $13,979.43 over a 50 week period and therefore has an average weekly wage of $279.59.

No finding was made whether Mills was a seasonal employee or reference made to the section of KRS 342.140 relied on in calculating Mills' average weekly wage.

■ Despite this failure in the ALJ's findings, the Board of Education's failure to file a petition for reconsideration requesting further findings limits the scope of review on appeal to whether the ALJ's conclusion is so unreasonable under the evidence that it must be reversed as a matter of law. *Eaton Axle Corp. v. Nally,* 688 S.W.2d 334 (Ky.1985).

We agree with the Board that the ALJ's conclusion was within the realm of reasonableness. Although Mills testified that there are schools with winter band programs, he had never been employed in such a capacity and that he was hired only to work from the summer to fall season. Under the circumstances we find nothing unreasonable in the ALJ's characterization of Mills' work as seasonal.

Based on the foregoing, the opinion of the Workers' Compensation Board is affirmed.

ALL CONCUR.