RENDERED: JULY 15, 2022; 10:00 A.M.
NOT TO BE PUBLISHED

# Commonwealth of Kentucky

# Court of Appeals

NO. 2022-CA-0282-WC

RANDY FAULKNER                                                   APPELLANT

|  | PETITION FOR REVIEW OF A DECISION |
|---|---|
| v. | OF THE WORKERS' COMPENSATION BOARD |
|  | ACTION NOS. WC-20-01106 AND WC-20-77760 |

EZ PACK REFUSE HAULING
SOLUTIONS; HONORABLE PETER J.
NAAKE, ADMINISTRATIVE LAW
JUDGE; AND THE WORKERS'
COMPENSATION BOARD                               APPELLEES

OPINION
AFFIRMING

** ** ** ** **

BEFORE: GOODWINE, JONES, AND MAZE, JUDGES.

MAZE, JUDGE: Randy Faulkner (Faulkner) has brought the within petition for

review of an opinion of the Workers' Compensation Board (Board) affirming the

September 21, 2021, opinion and order dismissing Faulkner's claims rendered by Honorable Peter J. Naake, Administrative Law Judge (ALJ). We also affirm.

On August 18, 2020, Faulkner filed a Form 101 in claim number WC-20-77760 alleging injury to his low back arising out of a fall sustained at his place of employment on June 16, 2020. On August 19, 2020, he also filed a Form 101 in claim number WC-20-001106 as to a neck injury, head laceration, and a concussion sustained on June 17, 2020, following another fall at his place of employment. Both claims were consolidated by order entered on September 18, 2020.

A final hearing was conducted by the ALJ on July 13, 2021. Following that hearing, the ALJ concluded that Faulkner did not sustain an "injury" as defined in KRS 342.0011(1) on either occasion. In so doing, he found that Faulkner's testimony was simply "not credible." Further, he held that the expert testimony of Faulkner's expert, Dr. Gilbert, was not persuasive regarding the issue of causation since it was based primarily on self-reporting by Faulkner. Because he found that no injury had been demonstrated, the ALJ found that the issues of notice, safety violation, benefits pursuant to KRS 342.730, medical benefits, and temporary total disability were "moot."

Faulkner then appealed the matter to the Board. It affirmed the decision of the ALJ, finding that he did not err in dismissing Faulkner's claims and

that said dismissal was supported by substantial evidence. The within review followed.

At the time of his alleged injuries Faulkner was employed in the paint department at EZ Refuse Hauling Solutions (EZ). He claimed that on June 16, 2020, he entered the oven portion of the painting booth to check on two special order parts that he had painted. It was the end of the day and the oven had been turned off. On his way back out of the booth, he slipped and fell, injuring his back, neck, and elbows. There were no witnesses to the event. Faulkner has indicated that he told Sterling Bass, his team leader, of the fall.

When he returned to work on June 17, 2020, he became sick and ran to the bathroom to throw up. He slipped and fell, striking his head. He then passed out for a period of some two hours. When he awoke, he reported that other employees were photographing him. He stated that T.J. Ham, his supervisor, sent him to the first aid room.

Ham has testified that, although he had worked with Faulkner on June 16, 2020, he was unaware of any injury occurring on that date. However, he did recall that on June 17, 2020, he and Bass went looking for Faulkner after a two-hour absence from his workstation. They found him in the bathroom, on the toilet, snoring. Faulkner awoke when Ham took his picture. Although he informed Ham

that he was sick, he did not mention any fall.  Ham escorted him to the first aid station.

Amanda Mellen, the Environmental Health & Safety Manager for EZ, was present in the first aid station when Ham and Faulkner arrived.  At that time, she did not know that he had allegedly fallen.  However, she did notice that he appeared to be dozing off while she was checking his vital signs.  At some point, plant manager Rick Reed arrived, and he and Ham agreed that there was "reasonable suspicion" to believe that Faulkner might be under the influence. Mellen testified that when a drug test was requested, Faulkner refused until Reed informed him that if he did not get tested, he would be terminated.  Reed and Mellen then drove him to Harrison Memorial Hospital for testing.  They then transported Faulkner to his home.  Based upon the positive results of that test, EZ terminated his employment.

The records of the Harrison Memorial Hospital indicate that Faulkner presented to Eugonda Fryman, APRN on June 18, 2020, complaining of back pain. She ordered x-rays of the lumbar spine and a CT of the cervical spine and head. The results of this imaging were unremarkable.  However, Faulkner returned to her the following day, reporting lightheadedness.  At that time, he reported the June 17 fall and she referred him for a blood pressure evaluation.  Following a physical

residual capacity assessment conducted on September 2, 2020, she concluded that Faulkner had chronic back pain as the result of an injury at work.

Dr. John Gilbert, M.D., Faulkner's expert, indicated that he examined him on October 8, 2020. Based upon the injuries reported by Faulkner, Gilbert diagnosed him with post-concussion syndrome, memory loss and headaches, spinal muscle spasms, and cervical radiculopathy. Based on this diagnosis he concluded that Faulkner had a 43% whole person impairment composed of 18% cervical radiculopathy, 14% memory impairment and post-concussive syndrome, 13% lumbar radiculopathy, and 8% thoracic pain/spasms. However, he did not break down the impairment based on the two alleged injury dates. His conclusion was that Faulkner was unable to work in any capacity in the foreseeable future.

Gilbert's findings differed markedly from those of Dr. Gregory Snider, M.D., EZ's expert. He examined Faulkner on November 10, 2020, and received the same descriptions of the two falls. Snider found that there were no objective medical findings that would support Faulkner's claim of a work-related injury on either day.

Dr. Joseph Zerga, M.D., examined Faulkner on December 15, 2020, on behalf of EZ. He provided Zerga with the same account of the two falls. Zerga also concluded that there were no objective findings which would enable him to render a diagnosis. However, he testified that if he gave Faulkner "the benefit of

the doubt" he would testify that he had a 5% impairment of the cervical spine. However, he also found that Faulkner would require no restrictions or further treatment.

As noted by the Board, the burden of proof herein was on Faulkner. *Snawder v. Stice*, 576 S.W.2d 276, 279 (Ky. App. 1979). The ALJ concluded, based upon the evidence, that he had failed to meet that burden. On appeal, the Board was charged with determining whether the evidence required a different result. *Wolf Creek Collieries v. Crum*, 673 S.W.2d 735, 736 (Ky. App. 1984). However, such a determination is only warranted where the ALJ's findings are so unreasonable as to demand reversal. *Ira A. Watson Department Store v. Hamilton*, 34 S.W.3d 48, 52 (Ky. 2000). The Board, having reviewed the testimony and other evidence presented to the ALJ, found that reversal was not mandated since his decision was supported by substantial evidence.

As noted in *Pike County Board of Education v. Mills*, 260 S.W.3d 366, 368 (Ky. App. 2008), "our standard of review of a decision of the Workers' Compensation Board 'is to correct the Board only where the . . . Court perceives the Board has overlooked or misconstrued controlling statutes or precedent, or committed an error in assessing the evidence so flagrant as to cause gross injustice.' *Western Baptist Hosp. v. Kelly*, 827 S.W.2d 685, 687-88 (Ky. 1992).'" Having reviewed record, the decision of the ALJ, and the Board's opinion, this

Court cannot find that the law was improperly applied or that the evidence was incorrectly considered.

Accordingly, we affirm the decision of the Workers' Compensation Board.

ALL CONCUR.

BRIEF FOR APPELLANT:

Clayton D. Scott
Lexington, Kentucky

BRIEF FOR APPELLEE EZ PACK REFUSE HAULING SOLUTIONS:

Donald C. Walton, III
W. Clayton Stone, II
Lexington, Kentucky