RENDERED: JANUARY 24, 2025; 10:00 A.M.
NOT TO BE PUBLISHED

# Commonwealth of Kentucky

# Court of Appeals

NO. 2024-CA-0789-WC

YOKOHAMA INDUSTRIES
AMERICAS INC.                                            APPELLANT


                    PETITION FOR REVIEW OF A DECISION
v.                  OF THE WORKERS' COMPENSATION BOARD
                    ACTION NOS. 23-WC-00530 AND 23-WC-00531


ALAN HARDIN, JR.;
HONORABLE STEPHANIE L. KINNEY,
ADMINISTRATIVE LAW JUDGE;
AND WORKERS' COMPENSATION
BOARD OF KENTUCKY                                         APPELLEES


OPINION
AFFIRMING

** ** ** ** **


BEFORE: ECKERLE, L. JONES, AND KAREM, JUDGES.

KAREM, JUDGE: Yokohama Industries America Inc. petitions for review of an

opinion of the Workers' Compensation Board ("the Board") affirming the award of

permanent total disability benefits and medical benefits to Alan Hardin, Jr. The sole issue on appeal is the sufficiency of the evidence supporting the finding of the Administrative Law Judge ("the ALJ") that Hardin's bilateral hip and lower back conditions were related to his employment at Yokohama. Upon careful review, we affirm.

**FACTUAL AND PROCEDURAL HISTORY**

At the time of the final hearing in January 2024, Hardin was sixty years of age. He had completed high school but received no other education or training. Prior to his employment at Yokohama, he worked as a busser/dishwasher, maintenance man, construction laborer, and floor technician. The latter job involved stripping, waxing, and buffing floors.

Hardin began working for Yokohama in 2016 as a temporary worker. He was hired on a permanent basis on April 2, 2018. For the first eight months beginning in 2016, he worked as a pipe bender, which required him to walk from machine to machine, and required manipulation with his hands. He thereafter worked as a machine operator, which required him to pick up a part that was a foot in length and weighed less than a pound, place it in a machine, allow the machine to run, and then place the part in a box. He was required to handle approximately 900 of these parts per shift and lift a tote weighing fifty pounds eight times per shift. The job required standing eight to ten hours per day, seven days a week.

Hardin experienced neck, back, wrist, knee, leg, foot, and hip pain prior to being hired by Yokohama. He received treatment for hip and back pain beginning in 2015. He underwent a right hip replacement on May 6, 2020, and a left hip replacement on July 14, 2021. For his back pain, he was prescribed a back brace and received injections.

Hardin continued to work at Yokohama through June 17, 2021, when he filed a workers' compensation claim alleging work-related injuries to his neck, back, and hips/wrists/knees/ankles due to cumulative trauma. He later filed a claim for work-related hearing loss which was consolidated with the earlier claim.

Dr. Bruce Guberman performed a physical examination of Hardin and reviewed his extensive medical records. Hardin reported to him that his symptoms were due to standing on concrete and performing repetitive work. Dr. Guberman diagnosed the following:

> 1. Degenerative joint and disc disease of the lumbosacral spine due to the cumulative trauma of work.
>
> 2. Degenerative joint and disc disease of the cervical spine due to cumulative trauma of work.
>
> 3. Degenerative arthritis of the right hip due to cumulative trauma of work.
>
> > a. Status post right total hip arthroplasty.
>
> 4. Degenerative arthritis of the left hip due to cumulative trauma of work.

a. Status post left total hip arthroplasty.

5. Degenerative joint disease of both knees due to cumulative trauma of work.

6. Bilateral carpal tunnel syndrome due to cumulative trauma of work.

Dr. Guberman assessed a 44 percent whole-person impairment rating and concluded that Hardin is unable to return to the type of work he performed at the time of his injuries:

> In my opinion, he is unable to stand and/or walk combined for a total of more than 30-40 minutes at a time or more than 3-4 hours in an 8-hour day. In my opinion, he is unable to sit for more than 45 minutes to an hour at a time or more than 4 hours in an 8-hour day. In my opinion, he is unable to kneel, crawl or squat. In my opinion, he is unable to climb ladders and should avoid stairs and inclines. In my opinion, he is unable to use his legs or arms for controls. In my opinion, he is unable to use his hands for repeated activities, forceful activities, or activities in an awkward position. He also should avoid vibration and heights.

By contrast, Dr. Ellen Bannerman, who performed an Independent Medical Examination on behalf of Yokohama, concluded that none of Hardin's symptoms were work-related and could be attributed entirely to degenerative arthritis exacerbated by his age. She stated that he had only worked at Yokohama for three years and that "his tendency towards arthritis is also something that runs more in families." She assessed a zero percent impairment.

The ALJ chose to rely on Dr. Guberman's report to find that Hardin sustained a work-related cumulative trauma injury to his hips and lower back:

> First, this ALJ notes that Hardin's job duties required repetitive bending, twisting and standing. Additionally, Hardin performed heavy lifting. Hardin has objective evidence of advanced bilateral hip osteoarthritis that ultimately required bilateral hip replacements. . . . Likewise, Hardin's lumbar x-rays showed osteoarthritis from L1 to L4. His lumbar MRI showed mild to moderate thecal sac compression at L3-4 and L4-5. Hardin's job duties coupled with advanced degenerative changes supports Dr. Guberman's causation opinion regarding Hardin's hips and back. This ALJ adopts Dr. Guberman's causation opinion on this issue.

Additionally, the ALJ relied on Dr. Ballard's opinion to find that Hardin did not sustain a cumulative trauma injury to his neck and knees.

The ALJ awarded Hardin permanent total disability benefits and medical benefits for injuries to his hips and lower back caused by cumulative trauma experienced in the course of his employment with Yokohama. The ALJ dismissed his claim for work-related injuries arising from cumulative trauma to his neck, hands/wrist, and knees and his occupational hearing loss claim.

Yokohama appealed from the ALJ's decision. The Board affirmed the ALJ's opinion, order, and award as to all the issues. This petition for review by Yokohama followed.

## STANDARD OF REVIEW

In workers' compensation cases, the claimant bears the burden of persuasion to prove every element of the claim. *Pike County Bd. of Educ. v. Mills*, 260 S.W.3d 366, 368 (Ky. App. 2008). The ALJ is the only factfinder in all workers' compensation claims. *General Motors, LLC v. Smith*, 694 S.W.3d 59, 63 (Ky. App. 2024) (citing Kentucky Revised Statutes ("KRS") 342.285(1)). The ALJ "has the sole discretion to determine the quality, character, weight, credibility, and substance of the evidence, and to draw reasonable inferences from the evidence." *Id.* at 63-64 (citation omitted).

The first level of review of the ALJ's decision is performed by the Board. The scope of the Board's review is defined by KRS 342.285(2):

> The board shall not substitute its judgment for that of the administrative law judge as to the weight of evidence on questions of fact, its review being limited to determining whether or not:
>
> (a) The administrative law judge acted without or in excess of his powers;
>
> (b) The order, decision, or award was procured by fraud;
>
> (c) The order, decision, or award is not in conformity to the provisions of this chapter;
>
> (d) The order, decision, or award is clearly erroneous on the basis of the reliable, probative, and material evidence contained in the whole record; or

(e) The order, decision, or award is arbitrary or capricious or characterized by abuse of discretion or clearly unwarranted exercise of discretion.

The purpose of the Board's review is error correction, though without the power of constitutional review.

*Lexington Fayette Urban County Government v. Gosper*, 671 S.W.3d 184, 199 (Ky. 2023) (citation omitted).

When the Court of Appeals reviews a decision of the Board, "we reverse only where it has overlooked or misconstrued controlling law or so flagrantly erred in evaluating the evidence that it has caused gross injustice." *GSI Commerce v. Thompson*, 409 S.W.3d 361, 364 (Ky. App. 2012) (citing *Western Baptist Hosp. v. Kelly*, 827 S.W.2d 685, 687-88 (Ky. 1992)).

When, as in this case, the decision of the ALJ favors the person with the burden of proof, "his only burden on appeal is to show that there was some evidence of substance to support the finding, meaning evidence which would permit a fact-finder to reasonably find as it did." *Gosper*, 671 S.W.3d at 199 (citation omitted). "Logically, a factual finding may not be deemed clearly erroneous if supported by substantial evidence of record. . . . In short, appellate courts may not second-guess or disturb discretionary decisions of an ALJ unless those decisions amount to an abuse of discretion." *Id.* at 199-200 (internal quotation marks and citations omitted).

-7-

## ANALYSIS

Yokohama's sole argument on appeal challenges the ALJ's finding, based primarily on Dr. Guberman's report, that Hardin's bilateral hip and lower back conditions were related to his work activities at Yokohama. Yokohama contends that Dr. Guberman's report cannot constitute substantial evidence to support the ALJ's finding of work-relatedness for three reasons: first, the report fails to provide a work injury date or cumulative trauma date; second, it fails to document that Hardin's employment with Yokohama was limited to only three years and three months; and third, it fails to explain how Hardin's work activities caused his current conditions.

Cumulative trauma injuries have long been recognized as compensable under Kentucky's workers' compensation law. In 1976, Kentucky's highest court expressly held "that injuries resulting from cumulative trauma, or gradual wear and tear, are compensable." *Gosper*, 671 S.W.3d at 200 (citing *Haycraft v. Corhart Refractories Co.*, 544 S.W.2d 222, 225 (Ky. 1976)). Specifically in reference to conditions associated with arthritis, the *Gosper* Court recently explained, citing *Haycraft*:

> While acknowledging arthritic changes are often part of
> the normal aging process – also referred to as normal
> wear and tear – which is common to the general public
> regardless of one's individual occupation . . . . [I]f it be
> found, or should be found, that the nature and duration of
> the work probably aggravated a degenerative disc

-8-

condition to the degree that it culminated in an active physical impairment sooner than would have been the case had the work been less strenuous, to that extent the pre-existing condition is itself an injury[.]

*Id.* (internal quotation marks and citations omitted).

It is also well-established in cumulative trauma cases that the employer at the time of the last injurious or hazardous exposure is liable for the full extent of the disability. *Hale v. CDR Operations, Inc.*, 474 S.W.3d 129, 138 (Ky. 2015). In *Hale*, the Kentucky Supreme Court considered whether the liability for cumulative trauma claims brought by claimants with multiple successive employers should be apportioned amongst those employers. It held that it should not because employing an apportionment scheme would create a "lesser" class of claimants:

> In hearing loss and occupational disease claims – which are quite similar in nature to cumulative trauma because they occur gradually over time – the employer at the time of the last injurious or hazardous exposure is liable. The employee is entitled to the same amount of compensation whether he worked for one employer or many. An employee who sustains a harmful change in his human organism due to cumulative trauma over many years working for the same employer is entitled to compensation to the full extent of his resultant disability. But, someone like [the appellant] would not be fully compensated, simply because he worked for multiple employers. We can discern no basis for such a distinction. "Although both the employee and the employer have rights under the [Workers' Compensation] Act, the primary purpose of the law is to aid injured . . . workers." *Zurich Am. Ins. Co. v. Brierly*,

-9-

> 936 S.W.2d 561, 563 (Ky. 1996). Nothing in KRS
> Chapter 342 limits the liability of the employer, in whose
> employ the date of manifestation occurred, to the
> percentage of the claimant's work-life spent there.

*Id*. (footnote omitted).

The ALJ recognized that Hardin's condition pre-dated his employment with Yokohama, noting that Hardin received treatment for his hip and back pain in 2015, 2016, and 2017 with UK Polk-Dalton Primary Care, while he was working for a different employer. She found:

> [T]hat Hardin's job duties with Yokohama exposed him
> to repetitive and prolonged standing, bending, and
> twisting. Thus, this ALJ relies on Hardin's testimony to
> find Yokohama was the last employer that exposed him
> to activities that caused cumulative trauma. Also,
> Hardin's hip replacements were performed after Hardin's
> work with Yokohama. Likewise, he underwent a lumbar
> MRS after his employment with Yokohama.

The ALJ acknowledged that Hardin's arthritic condition predated his employment with Yokohama, but also found that Yokohama, as the last employer who exposed him to activities that exacerbated his back and hip conditions, was liable for the entire amount of his compensable benefits. These findings comport fully with *Haycraft* and *Hale*.

Unlike workers' compensation claims stemming entirely from a single, discrete, work-related injury, such as a fall, the injury in this case was incurred over many years. Therefore, it was not necessary for Dr. Guberman to

-10-

assign a single "work injury" or "cumulative trauma" date for his report to have evidentiary value. Rather, his report reflected that Hardin's condition developed over time, including the three years and three months that he was employed by Yokohama.

Thus, Yokohama's first two arguments, that Dr. Guberman's report was inadequate for failing to provide a work injury or cumulative trauma date, and failed to document that Hardin was employed at Yokohama for three years and three months, are without merit. As Hardin's last employer, Yokohama was liable for the full extent of Hardin's injury, even if his employment with Yokohama was not the sole cause of his cumulative trauma.

Third and finally, Yokohama argues that, at a minimum, an opinion explaining what specific job duties caused Hardin's bilateral hip and lower back conditions is necessary in order for Dr. Guberman's report to constitute substantial medical evidence on causation. Yokohama points out that there is other evidence in the record to support a finding that his hip and back conditions are simply a condition of Hardin's chronic arthritis which predated his employment with Yokohama.

In assessing Yokohama's argument – that Dr. Guberman's report could not constitute substantial evidence because it rested on a "blanket conclusion addressing causation" and fails to make sufficient causal links between Hardin's

employment and his back and hip condition – we turn for guidance to *Perry County Board of Education v. Campbell*, 666 S.W.3d 920 (Ky. App. 2022), *aff'd*, 671 S.W.3d 95 (Ky. 2023). In *Campbell*, an employee fell at work, injuring his knee. He underwent total knee replacement surgery about fifteen months later. He claimed the replacement surgery was compensable because it was caused by the workplace injury. The employer came forward with reports from three orthopedic surgeons who opined that there was no causal relation between the employee's fall at work and the surgery. *Id.* at 925. The employee, by contrast, submitted medical evidence that "did not contain similarly specific, explicit opinions about a causal relationship" between the work incident and the total knee replacement. *Id.* The employer contended, in an argument similar to Yokohama's, that the employee's medical evidence did not provide sufficient evidence of causation to justify the finding of a work-related injury.

*Perry* acknowledged that the opinions relied upon by the ALJ did not find a causal relation between the work incident and the knee replacement surgery "with any degree of specificity." *Id.* at 929. It emphasized, however, that "the ALJ has authority to make reasonable inferences from the evidence . . . [a]nd the ALJ alone can determine which medical opinions he or she finds most credible and reliable." *Id.* (citations omitted). "It is the quality and substance of a physician's testimony, not the use of particular 'magic words,' that determines whether it rises

-12-

to the level of reasonable medical probability, i.e., to the level necessary to prove a particular medical fact. Where there is conflicting medical testimony concerning the cause of a harmful change, it is for the ALJ to weigh the evidence and decide which opinion is the most credible and reliable." *Id*. (citing *Brown-Forman Corp. v. Upchurch*, 127 S.W.3d 615, 621 (Ky. 2004)) (citation omitted).

Similarly, the Board in this case stated it was "cognizant there are opinions in the record which run contrary to those put forth by Dr. Guberman; however, such evidence is not an adequate basis for reversal on appeal. . . . Rather, any evidence to the contrary merely represents conflicting medical opinions which the ALJ, as fact-finder, is free to reject."

In his report, Dr. Guberman provided a detailed medical history of Hardin's back and hip condition and his treatment for the condition. The report states that: "Hardin reports pain in multiple joints, including his cervical spine, both hips, both knees, and both hands and wrists, which he relates to the cumulative trauma of his work." Guberman's report also states that Hardin provided a detailed job description which the doctor reviewed and considered in preparation of his report. As we noted above, the ALJ described Hardin's work as involving repetitive and prolonged standing, bending, and twisting. It was well within the ALJ's discretion to choose to rely on Dr. Guberman's report as establishing a causal connection between Hardin's work activities and his arthritis

and to rely on Dr. Guberman's plainly stated opinion that the degenerative joint and disc disease of the spine and the degenerative arthritis of the hips and knees was due to cumulative trauma of work.

Yokohama argues that "overwhelming medical evidence" supports a finding that Hardin's hip and back conditions are simply a continuation of his chronic arthritis, which predates his employment with Yokohama. It insists that it is more logical that his prior employment as a floor technician caused or contributed to his condition because his own testimony indicated it involved strenuous activities involving the use of his entire body and being on his hands and knees. But in the context of cumulative trauma cases, the fact that Hardin's employment as a floor technician prior to his employment at Yokohama may have contributed to his arthritic condition does not absolve Yokohama of liability. Dr. Guberman's report and Hardin's testimony support a finding that the nature of his work at Yokohama continued to aggravate this condition. In any event, Yokohama's argument regarding the impact of Hardin's prior work as a floor technician contradicts its earlier contention, based on Dr. Ballard's report, that Hardin's condition was purely age-related as opposed to work-related.

## CONCLUSION

For the foregoing reasons, the opinion of the Workers' Compensation Board is affirmed.

-14-

ALL CONCUR.


BRIEF FOR APPELLANT:

Brian D. Wimsatt
Louisville, Kentucky

BRIEF FOR APPELLEE ALAN
HARDIN, JR.:

McKinnley Morgan
London, Kentucky